## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re: | C/A No. 25-02646-EG |
| Jacqueline Natasha McGhee, | Chapter 7 |
| Debtor. | **ORDER DENYING MOTION TO CONVERT FROM CHAPTER 7 TO CHAPTER 13 AND DENYING MOTION FOR TURNOVER OF VEHICLE** |

Jacqueline Natasha McGhee ("Debtor") seeks conversion of her Chapter 7 bankruptcy case to Chapter 13 and turnover of a vehicle that was repossessed prepetition by American Credit Acceptance, LLC ("ACA") due to her failure to make any payments for two years. Debtor is not represented by counsel in this case.  Shortly after submitting her voluntary petition and related documents to the Court, Debtor realized that a Chapter 7 bankruptcy filing would not provide the relief she needed and asked the Court to convert the case to Chapter 13. Unfortunately for Debtor, conversion from Chapter 7 to Chapter 13 is not an absolute right and does not occur automatically.  Debtor's conduct thus far in this case indicates that she fails to grasp the seriousness of filing bankruptcy and her duties to provide complete and accurate information to the bankruptcy court.  Since the beginning of the case, Debtor has filed documents and presented evidence that is conflicting, unreliable, and lacking credibility to fulfill her disclosure obligations and support her burden of proof.

On July 11, 2025, Debtor filed the (1) Motion to Convert Case from Chapter 7 to Chapter 13 ("Motion to Convert")[1] and (2) Amended Motion for Turnover of Property and

---

[1] ECF No. 17, filed July 11, 2025.

Enforcement of Automatic Stay pursuant to 11 U.S.C. §§ 362 and 542 ("Turnover Motion").[2]

The Court conducted an expedited hearing on July 24, 2025, which Debtor and counsel for

American Credit Acceptance, LLC ("ACA") attended in person, and counsel for the United

States Trustee attended remotely.[3]  At the conclusion of the hearing, the Court took the matters

under advisement.  Having carefully considered the evidence presented, the record before the

Court, and the arguments of the parties, the Court denies both motions.

## FINDINGS OF FACT

Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code

(the "Petition") on July 10, 2025 (the "Petition Date"), using the Court's online electronic

Self-Representation tool ("eSR").  In Part 2, Item 2, of the Voluntary Petition, when specifying

"[t]he chapter of the Bankruptcy Code you are choosing to file under," Debtor checked

"Chapter 7."  In Part 6, Item 17, when answering the question "[a]re you filing under Chapter

7," Debtor checked "yes" and indicated that she did not estimate any funds would be available

for distribution to unsecured creditors.  Thus, the case was opened as a Chapter 7 petition.

According to the Court's records, Debtor first attempted to email documents to the

Court on July 8, 2025 at 3:35 a.m.  Consistent with the requirements of SC LBR 5005-4(d)(2),

an automated response was sent to her email address noting:

> Your bankruptcy petition package has been submitted to the United States
> Bankruptcy Court, District of South Carolina, but it has not been officially
> filed.  The automatic stay you may be entitled to under 11 U.S.C. § 362 will
> not go into effect unless you comply with the instructions below to complete
> the filing process.
>
> STEP 1 – Submit Required Document

---

[2] ECF No. 29, filed July 17, 2025.  The Amended Motion appears to amend an earlier motion seeking turnover filed on July 16, 2025 (ECF 28).

[3] While counsel for the United States Trustee made an appearance, he did not assert any positions.

YOU MUST PROVIDE THE FOLLOWING ITEMS WITHING THREE (3) DAYS TO COMPLETE THE SUBMISSION OF YOUR BANKRUPTCY FILING:

1. Declaration Regarding Electronic Filing (See Attachment)
2. Statement About Your Social Security Numbers (official Form B121) (See Attachment)
3. Copy of your Government-issued photo identification (e.g., driver's license, passport) in PDF format.

. . .

**\*\*\* The Court cannot open your case and issue a case number until these items are received.**

**Your bankruptcy petition will be deemed filed as of the date the Court RECEIVES (1) the complete and signed Declaration, (2) the completed and signed Statement About Your Social Security Numbers, AND (3) a copy of your government-issued photo identification.**

**Failure to properly complete and submit these documents may delay the filing of your bankruptcy petition and the opening of your case.**

As the Court's records further reflect, the documents necessary to open Debtor's case were not received until 12:08 a.m. on July 10, 2025. At the hearing, Debtor testified that when she submitted the Petition, she received an email that additional documents were required for the case to be opened. She filed the additional documents, including a chapter 13 plan, declaration, and income verification, all of which specified that she was filing under Chapter 13. The Notice of Bankruptcy Case Filing ("Notice") issued by the Court indicates that the Chapter 7 case was filed at 12:08 a.m. on July 10, 2025, and was entered on July 10, 2025, at 9:22 a.m.[4] The Clerk's Office emailed the Notice to Debtor on July 10, 2025, advising her that the case had been opened as a Chapter 7 and the case number assigned to her case was 25-02646-EG.

---

[4] The date Debtor filed the documents is considered the official "filing" date of the case. Because Clerk's office staff may not be able to enter the documents immediately upon receipt, there is usually a lag time between the date and time the documents are "filed" and the date and time they are "entered" into the Court's records. Thus, for CM/ECF purposes, documents usually reflect a date that they were officially "filed", which may not be identical as the date they were entered.

In Part 5 of the Petition, Item 15, Debtor indicated that she had received a briefing from an approved credit counseling agency within 180 days before filing this bankruptcy petition and that she received a certificate of completion; however, she did not file a credit counseling certificate with the Petition.  Together with the Petition, Debtor filed the following documents:[5] (1) Declaration About an Individual Debtor's Schedules, (2) Summary of Your Assets and Liabilities and Certain Statistical Information, (3) Schedules A-J, (4) Statement of Exemption from Presumption of Abuse Under § 707(b)(2), (5) Statement of Financial Affairs for Individuals Filing for Bankruptcy ("SOFA"), (6) Statement of Intention for Individuals Filing Under Chapter 7, and (7) Mailing List.  Debtor also filed a Declaration Regarding Electronic Filing (Self-Represented Individual),[6] signed by Debtor and dated July 9, 2025, wherein she made the following declaration under penalty of perjury:

> (1) I (we) have read and understand the above-referenced document(s) being filed electronically ("Voluntary Petition"); (2) the information contained in the petition, statements and schedules, lists, and disclosures is true and correct, to the best of my knowledge and belief; and (3) I (we) have authorized the electronic filing of the Voluntary Petition with the United States Bankruptcy Court, District of South Carolina.
> . . .
> I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Debtor also selected the box on the form to state that:

> I (we) am (are) aware that I (we) may proceed under Chapter 7, 11, 12, or 13 of Title 11 United States Code; **I (we) understand the relief available under each chapter; I (we) choose to proceed under Chapter 7; and I (we) request relief in accordance with Chapter 7.**

(emphasis added).

---

[5] ECF No. 1.
[6] ECF No. 2.

On Schedule A/B, Debtor listed ownership of a 2020 Mercedes Benz C300 (the "Vehicle") with a current value of $32,000.00.  Debtor claimed no exemptions on Schedule C.  Debtor listed no secured creditors on Schedule D or unsecured creditors on Schedule E/F. On Schedule G: Executory Contracts and Unexpired Leases, Debtor listed ACA as having an executory contract or unexpired lease, which she described as follows: "I have an auto loan with this company for my car."[7]  On Schedule I: Your Income, Debtor indicated that she is "Not employed" and has no income.  In part 13, she further explained that:

> I am actively seeking employment and remain committed to reentering the workforce.  I recently received a job offer with an anticipated start date of July 14, 2025; however, I was just informed that the hiring date has been postponed until Q4, with no confirmed timeline.
> . . .
> At present, I have no income . . . .

On Schedule J: Your Expenses, Debtor indicated she had no dependents and listed monthly expenses of $3,754.00.  Debtor filed a Statement of Exemption from Presumption of Abuse Under § 707(b)(2), wherein she indicated that her debts were primarily consumer debts and that she is a disabled veteran.[8]

On the SOFA, Debtor indicated that she had lived at one other address in the last three years in Charleston, South Carolina.  At the hearing, however,  Debtor testified that she has moved four times in the past year.[9]  Debtor stated that her principal residence is in South Carolina; however, she still maintains a Pennsylvania driver's license.[10]  Debtor testified that she moved to Charleston, South Carolina, in May of 2023, and lost her job the week after she

---

[7] Debtor also listed Michael Allenberg, Xfinity, and Peloton as holders of executory contracts or leases with Debtor.

[8] There is no other indication in the Court's record that Debtor ever served in the military, naval, or air services.

[9] When questioned by the Court as to why the additional addresses were not listed, Debtor stated that she thought she was only supposed to list her prior addresses in South Carolina.

[10] As part of her government-issued identification, Debtor filed a passport card which reflected her place of birth as Pennsylvania but did not include an address.

relocated and was unable to find new employment until recently.  Debtor said that while she

was unemployed, she paid her bills by selling her possessions to third parties and using her

savings.  In response to Part 7, Item 18 of the SOFA, however, Debtor indicated that she did

not sell, trade, or otherwise transfer any property to anyone, other than property transferred in

the ordinary course of business or financial affairs, within two years before she filed for

bankruptcy.

In response to Part 4, Item 10 of the SOFA, regarding whether within one year before

filing for bankruptcy, any of Debtor's property was repossessed, foreclosed, garnished,

attached, seized, or levied, Debtor responded in the affirmative, but, other than naming ACA

as the creditor, she did not provide additional detail, nor did she check the appropriate box

indicating whether the property was repossessed, foreclosed, or garnished.  As to ACA,

Debtor explained that:

> I have gotten behind on my car payments and although when purchasing I put
> down 8K with my trade, and an additional 10K for a downpayment, I lost my
> high paying job 5 months after I purchased my new car.  I am requesting a stay
> for the vehicle and intend on trying to have a payment plan to keep the car, I
> just need more time and am doing eve3rything (sic) I can do.  I need my car for
> transportation for interviews and basic life.  Once I obtain employment in my
> field, I could pay off the balance in 2 months, I am trying everything and want
> to resolve the account but need to keep my car.  I invested $18,000 of my own
> money into it post auto loan.

In the Statement of Intention for Individuals Filing Under Chapter 7, Part 2, Debtor listed

ACA as the lessor of an unexpired personal property lease and indicated that the lease would

not be assumed.

Debtor also filed a Chapter 13 plan on July 10, 2025 (the "Plan"),[11] indicating that she

intended to cure the arrearage in the amount of $19,000 on her loan with ACA by making

---

[11] ECF No. 5.

monthly payments of $700.00.  The Plan proposes that Debtor will make payments to the trustee of $500 per month for 5 months and $2,500 per month for 72 months, for a total plan term of 77 months.

On July 11, 2025, Debtor filed the Motion to Convert and called the Clerk's office to request that her case be converted to Chapter 13 due to an eSR submission error.  Debtor claims that the case was incorrectly initiated as a Chapter 7 case due to a clerical error or an administrative oversight.  In the Motion to Convert—filed one day after the schedules indicating she had no income and no job prospects until later this year—Debtor indicated that "[t]he debtor has a regular income sufficient to support a feasible Chapter 13 repayment plan and is fully eligible for relief under Chapter 13 pursuant to Bankruptcy Code."  She further indicated in the Motion to Convert that she had filed updated schedules, but no amended Schedule I reflecting her current income was filed.

On July 14, 2025, Debtor called the Clerk's office to ask for the status of the conversion of her case to Chapter 13.  She stated to Clerk's office staff that she was informed the filing of the case as a Chapter 7 was a clerical error, and she would be able to get the issue fixed without the hassle of a hearing and motion.  Later that day, Debtor filed an Emergency Motion to Expedite Correction of Bankruptcy Chapter Filing.  In the emergency motion, Debtor submits that the eSR system erroneously opened the case under Chapter 7.  In support of her request for immediate relief, Debtor states:

    (1) the correction of the chapter designation is extremely urgent, as she is "facing repossession of my vehicle within the next 24 hours;"

    (2) her Vehicle is "under active repossession notice as of today" and she is at risk of losing her vehicle within the next 24-48 hours;

(3) she "traded in a paid-off Audi and made a $10,000 down payment on this vehicle so contributed upfront payments of $18K, followed by regular monthly payments until [her] income was lost";

(4) she is concerned about losing her only means of transportation for her job; and

(5) she "recently regained employment and [is] prepared to resume payments immediately, increasing contributions to $2,500/month within four months to pay off the outstanding balance by year-end."

The Court denied the motion to expedite the hearing on the Motion to Convert, by order entered July 15, 2025 (the "July 15th Order"), finding that expedited consideration of the Motion to Convert did not appear to be required based upon the record before it as the automatic stay was in place to prevent a possible repossession. The Court also noted that Debtor had not demonstrated a need to bypass the notice requirements imposed by the Federal Rules of Bankruptcy Procedure and the local rules of this Court.[12] Contrary to her assertions that the opening of her bankruptcy case as a Chapter 7 case was a clerical error, in the July 15th Order, the Court further noted:

> As the Court's records reflect, on July 11, 2025, Debtor called the Court to advise that the case had been incorrectly filed under Chapter 7. She claimed during a later phone call on July 14, 2025 that she was told by Clerk's office staff during that initial call that the filing of the case under Chapter 7 was a clerical error. To be clear, the Clerk's office does not provide legal advice. The filing of the case under Chapter 7 was not caused by the incorrect docketing of the petition, but rather because Debtor filled out the paperwork in a manner indicating she desired to file a Chapter 7 case.

On July 16, 2025, Debtor filed a motion for turnover of property and enforcement of stay in which she asserted that "American Credit Acceptance repossessed the vehicle post-petition, without court approval or relief from the automatic stay" and further indicated that

---

[12] ECF No. 21. The Court notes that it was also not clear from the record when ACA received notice of the bankruptcy filing or the Motion to Convert. No certificate of service has been filed indicating that any of the motions filed by Debtor to date have been served on ACA. ACA's address was not included in the schedules and was not added to the creditor matrix.

the vehicle was necessary for "commuting, childcare responsibilities, and fulfilling objections under her Chapter 13 plan."[13]  On July 17, 2025, Debtor filed a second motion seeking an expedited hearing on the Motion to Convert, together with the amended Turnover Motion, which also requested expedited consideration.[14]  The second motion seeking the expedited hearing again asserted that the vehicle was repossessed "shortly after the original Chapter 7 filing."  Because the issues raised in the Motion to Convert appeared to be intertwined with the Turnover Motion, the Court determined it was appropriate to have an expedited hearing on both motions.[15]

In the Turnover Motion, Debtor seeks (1) an order compelling ACA to return the Vehicle, which she contends was repossessed two days <u>after</u> the filing of the Petition (*i.e.*, July 12, 2025), and (2) damages or sanctions for ACA's alleged violation of the automatic stay "despite being notified of the Chapter 13 conversion."

After the Turnover Motion was filed, however, ACA filed a motion seeking relief from the automatic stay regarding the Vehicle (the "Motion for Relief from Stay"), asserting that it repossessed the Vehicle on July 7, 2025—three days <u>before</u> the bankruptcy case was filed.[16] In contrast to her allegations in the Turnover Motion, Debtor testified at the hearing that the Vehicle was repossessed on July 8, 2025—the same day as when she claims she submitted the Petition.[17]  Counsel for ACA represented that the Vehicle was repossessed on July 7, 2025.

---

[13] ECF No. 28.  Notably, Schedule J did not mention any dependents or childcare expenses and issues of childcare were never mentioned at the hearing.

[14] ECF Nos. 25 (Motion to Expedite Hearing) and 29 (Amended Motion for Turnover).

[15] ECF Nos. 32 (Order and Notice of Emergency Hearing Regarding Turnover of Vehicle and Enforcement of Automatic Stay) and 33 (Order Granting Motion to Expedite Hearing on Motion to Convert to Chapter 13), filed July 18, 2025.

[16] ECF No. 30, filed July 17, 2025.

[17] During her testimony, Debtor asserted that she "filed" her Petition on July 8, 2025, but the case was not opened until she submitted further required documents on July 10, 2025, inferring that July 8th was somehow legally significant for the purposes of the application of the automatic stay.  As set forth above, she was notified by an

In its Motion for Relief from Stay, ACA represented that it is the holder of a secured claim against Debtor in the amount of $32,276.77 as of July 14, 2025, plus finance charges, costs, and attorneys' fees, which are all secured by the Vehicle. The Retail Installment Sale Contract attached to ACA's motion indicates that Debtor purchased the Vehicle on April 22, 2023, from Enterprise Rent-A-Car Company of Pittsburgh, Pennsylvania and the Vehicle is titled in Pennsylvania. ACA asserts that Debtor has no equity in the Vehicle and has not made payments for the past two years, creating a total arrearage of $20,115.50. ACA seeks relief from the stay to allow it to sell the Vehicle in a commercially reasonable manner. The deadline to object to the Motion for Relief from Stay was July 31, 2025, but Debtor did not filed any objection.

On July 21, 2025, Debtor filed her Certificate of Credit Counseling indicating she received credit counseling on July 21, 2025, at 1:39 p.m. from 001 Debtorcc, Inc.[18] Debtor also filed a transaction receipt from 001 DEBTORCC INC indicating that Debtor paid for "First Bankruptcy Course" on July 8, 2025 at 1:01 a.m.[19] She further indicated that she "completed the certificate" on July 8, 2025, but she had to speak to a representative before they would "officially issue the document." According to Debtor, the representative was unavailable at the time she completed the course, and she did not speak to a representative until July 21, 2025.

On July 23, 2025—the eve of the hearings on the Motion to Convert and Turnover Motion—Debtor filed a Declaration Regarding Proof of Income and Support for Conversion to Chapter 13 (the "Declaration"), wherein she represented that she had obtained full-time

---

automated reply email that the case was not considered opened yet and the automatic stay would not become effective until further documents were received and a case number assigned.
[18] ECF No. 42.
[19] ECF No. 43.

employment as a Client Partner with Wipro Ltd., effective July 1, 2025—10 days before the

Petition Date.[20]  While calling it a "Declaration," the document was not notarized nor did it

contain the language required pursuant to 28 U.S.C. § 1746 declaring the truthfulness of the

information under penalty of perjury.  Rather, Debtor affirmed "that this submission is made

in good faith and in accordance with all applicable rules and statutes."  Debtor attached to the

Declaration a copy of an Earnings Statement from WIPRO LLC (the "Paystub"), indicating

income of $7,500 for 80 hours of work for the pay period of July 1, 2025 through July 15,

2025.  Debtor testified that she downloaded the Paystub from the ADP website.  She testified

that her annual salary is $175,000.00 before any bonus.  Debtor presented the Paystub to the

Court at the hearing as evidence of her income and employment, but ACA objected to the

admission of the Paystub on hearsay grounds.  The Court took the evidentiary issue under

advisement.

   At the hearing, ACA presented the following documents into evidence:

   (1) Debtor's payment history with ACA, showing an arrearage of $20,114.50 and no
   payments received since November 1, 2023 ("Exhibit A");

   (2) Email from Debtor to ACA from July 17, 2025 at 9:17 a.m., stating "Hello, The
   courts approved the clerical error and updated my bankruptcy case to reflect chapter
   13 with the amended case number filed.  Please confirm release of my car under
   chapter 13.  Please see attached. Jacqueline" ("Exhibit B");

   (3) Notice of Bankruptcy Case Filing, stamped as filed on July 10, 2025 at 12:08 a.m.,
   stating "A bankruptcy case concerning the debtor(s) listed below was filed under
   Chapter 13 of the United States Bankruptcy Code, entered on 07/06/2025 at 09:22 AM
   and filed on 07/10/2025," which ACA claims Debtor altered to reflect the case was
   filed before the Vehicle was repossessed ("Exhibit C");

   (4) Notice of Bankruptcy Case Filing stamped as filed on July 10, 2025 at 12:08 a.m.,
   stating "A bankruptcy case concerning the debtor(s) listed below was filed under
   Chapter 7 of the United States Bankruptcy Code, entered on 07/10/2025 at 09:22AM
   and filed on 07/10/2025", which is consistent with the Court's records ("Exhibit D");

---

[20] ECF No. 49.

(5) Retail Installment Sale Contract for 2020 Mercedes-Benz C-Class, dated April 22, 2023, executed by Jacqueline Natasha McGhee ("Exhibit E"); and

(6) Schedule I filed by Debtor on July 10, 2025, indicating $0.00 in income ("Exhibit F").

Exhibits A-F were admitted into evidence over Debtor's objection on relevancy grounds.

The day after the hearing, Debtor filed a "Statement Regarding Income for Bankruptcy Hearing on July 24, 2025,"[21] wherein she stated:

I am submitting this statement to clarify the income disclosures associated with my Chapter 7 bankruptcy petition, as reviewed during the court hearing on July 24, 2025, and to support my request for conversion to Chapter 13.

At the time of completing the petition and accompanying forms, I had not yet received any paychecks from my current employer. Accordingly, I reported $0 income in the relevant sections, as no wages had been received to date. Since then, I have provided a copy of my first paystub as evidence of earned income.

Additionally, on July 24, 2025, I received and accepted a formal offer of employment for a second position. This new role is scheduled to commence on August 5, 2025. I have included both the offer email and my confirmation of acceptance as part of this submission.

This documentation reflects my evolving income status and supports my ability to meet the proposed repayment obligations under Chapter 13.

Debtor attached a copy of an email from Qualitest P&T sent to Debtor on July 24, 2025, at 5:23 p.m.--approximately five hours after the hearing concluded—which included a copy of an offer letter dated July 24, 2025 for a Director position with salary of $150,000 per year with $20,000 per year performance bonus and a start date of August 5, 2025.

## CONCLUSIONS OF LAW

Before delving into the merits of the motions before the Court, it is crucial to determine the exact date and time the case is deemed to have been filed. Pursuant to Federal Rule of Bankruptcy Procedure 1002, "[a] bankruptcy case is commenced by filing a petition with the

---

[21] ECF No. 58, filed July 25, 2025. The document was not notarized nor verified under penalty of perjury.

clerk." Rule 5005, in turn, governs the means by which parties may file documents with the Court. Fed. R. Bankr. P. 5005. As for unrepresented individuals, Rule 5005(a)(3)(B) provides that "[a]n individual not represented by an attorney: (i) may file electronically only if allowed by court order or local rule; and (ii) may be required to file electronically only by court order, or by a local rule that includes reasonable exceptions." Fed. R. Bankr. P. 5005(a)(3)(B).

This Court has implemented local rules to set forth how unrepresented parties may submit documents to the Court. Under the South Carolina Local Bankruptcy Rules, *pro se* individuals may submit a petition for bankruptcy relief using eSR. More specially, pursuant to SC LBR 5005-4(d)(2), to complete such submission, the *pro se* individual shall, within three (3) days of submittal, deliver to the Clerk of Court in Columbia (a) a completed and signed copy of the *pro se* individual's Declaration Regarding Electronic Filing; (b) a completed and signed Statement About Your Social Security Number, and (c) a copy of a government-issued photo identification of the *pro se* individual that includes the filer's name and address.[22]  SC LBR 5005-4(d)(2)(A). As laid out in great detail above, despite Debtor submitting a petition through eSR on July 8, 2025, she was immediately informed that that submission did not automatically open her bankruptcy case or trigger the automatic stay to go into effect. Rather, additional information was required, and the case would not be opened until she submitted all the necessary documents—which did not occur until July 10, 2025 at 12:08 a.m.

Moreover, while Debtor is attempting to shift the blame onto the Clerk of Court's staff for opening the case under the wrong chapter, as the Court previously noted, the blame rests

---

[22] As her form of identification, Debtor submitted a passport card which did not provide an address. The Clerk's Office nonetheless opened the case, and no parties have challenged that to date. At the 341 meeting the Debtor will likely be required to present a form of identification bearing her address which may then raise further questions and issues which are not relevant for the purpose of this Order.

on the Debtor herself.  Debtor expressly indicated in her Petition that she was choosing to file under Chapter 7 and reiterated the same intent in the Declaration Regarding Electronic Filing. Further documents filed with the Petition and schedules also supported that.  While Debtor then filed a Chapter 13 plan, that did not automatically convert the case to a Chapter 7, and the fact that it was filed after she submitted several documents indicating that Debtor had elected to file the case under Chapter 7 does not evidence any eSR error, but rather suggests that Debtor either changed her mind too late or was attempting to cover her bases in case she later determined she preferred to proceed in Chapter 13 instead.  Parties in interest received notice of the commencement of the Chapter 7 case[23] and, as required by the rules and general procedures, the conversion to Chapter 13 is scheduled on passive notice to be served on the creditor matrix.

While courts tend to construe *pro se* litigants' pleadings liberally, such leniency is not without its limitations; "[i]n order to promote efficiency and preserve the integrity of the system, courts may not allow *pro se* litigants to deviate completely from the rules of procedure or court-imposed deadlines."  *In re Foxwood Hills Prop. Owners Ass'n, Inc.,* 626 B.R. 891, 896 (Bankr. D.S.C. 2021) (quoting *In re Loy*, 448 B.R. 420, 437 (Bankr. E.D. Va. 2011)). Debtors, both represented and unrepresented, cannot pick and choose which rules apply to them.  Moreover, once they file petitions under penalty of perjury, they cannot simply claim they meant for their documents to imply something different.  The Clerk's office can only enter documents and open cases as they are filed, without having to read between the lines as to Debtor's intent, especially when the intent is clearly asserted in the Petition.

---

[23] ECF No. 6.

Opened as a Chapter 7 case, the Court now needs to consider whether (1) grounds exist to convert the case to Chapter 13, and (2) whether Debtor is entitled to the turnover of the Vehicle. For the reasons set forth below, the Court concludes that the case should not be converted to Chapter 13, and as a result, Debtor lacks standing to seek the turnover of the Vehicle. Even if the case was converted to Chapter 13 or Debtor had standing to seek the return of the Vehicle, the requested turnover is not warranted on the record before the Court.

## I.     Motion to Convert from Chapter 7 to Chapter 13

Conversion of a Chapter 7 case to another bankruptcy chapter is governed by 11 U.S.C. § 706, which provides that "a debtor *may* convert a [Chapter 7] case to a case under chapter 11, 12, or 13 of this title at any time" if the case has not been previously converted. 11 U.S.C. § 706(a) (emphasis added). The United States Supreme Court has held that a Chapter 7 debtor does not have an absolute right to convert her case to Chapter 13. *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365 (2007). Rather, Debtor's right to convert is limited by 11 U.S.C. § 706(d), which provides that "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless *the debtor may be a debtor under such chapter.*" 11 U.S.C. § 706(d) (emphasis added). Applying *Marrama*, this Court has previously held that a debtor may not be entitled to convert her case to Chapter 13 under § 706(a) "if the debtor (a) is not eligible for chapter 13 under the requirements and limits of § 109(e), or (b) has engaged in bad faith conduct—prepetition or during the pendency of the Chapter 7 case—sufficient to constitute 'cause' that would ultimately warrant dismissal or reconversion of the Chapter 13 case under § 1307(c)." *In re Elmore,* 668 B.R. 122, 129 (Bankr. D.S.C. 2025). "The Debtor bears the initial burden of making a *prima facie* case for conversion by demonstrating that there has been no prior conversion of the case, that the

Debtor is eligible for relief under 11 U.S.C. § 109, and that conversion is to achieve a purpose permitted under the proposed chapter." *In re Bradley,* 649 B.R. 693, 701 (Bankr. D.S.C. 2023).

Notwithstanding Debtor's representations to ACA to the contrary,[24] Debtor's case has not been previously converted. The Petition was filed under Chapter 7 at Debtor's election and remains a Chapter 7 case. Section 109(e) of the Bankruptcy Code provides that "only an individual *with regular income*" that owes unsecured debts of less than $526,700.00 and secured debts of less than $1,580,125.00 is eligible to seek relief under Chapter 13. 11 U.S.C. § 109(e) (emphasis added). While Debtor's unsecured and secured debts do not appear to exceed the jurisdictional limits of § 109(e), Debtor must still overcome the hurdle of demonstrating that she is an individual with regular income. *Elmore,* 668 B.R. at 130.

Debtor's Schedule I and Chapter 7 Statement of Current Monthly Income,[25] which have not been amended or withdrawn, were filed under penalty of perjury and state that she has no income and is not employed. Debtor subsequently filed the Declaration and copy of the Paystub from WIPRO, affirming only that "this submission is made in good faith and in accordance with all applicable rules and statutes." The Paystub reflects that Debtor received gross income of $7,500 for a two-week pay period from July 1, 2025 to July 15, 2025. Debtor referred to the Paystub filed on the docket as evidence of her current income, but ACA objected to its admission on hearsay grounds.[26] Debtor offered no other evidence at the

---

[24] *See* Ex. B.

[25] ECF No. 51, filed July 23, 2025.

[26] The Court notes that Debtor did not produce a copy of the Paystub at the hearing to introduce into evidence. Prior to the hearing, the courtroom deputy notified Debtor regarding the requirements of SC LBR 9070-1, which requires a party to submit an exhibit for a hearing to the courtroom deputy in advance of the hearing and to exchange the exhibit with the opposing party. Debtor appears to rely on her filing of the exhibit on the Court's docket through the Electronic Document Submission System ("EDSS") for its introduction into evidence. Even if the Court were to take judicial notice of the Paystub as part of the record of the Court, it would not be allowed into evidence because, as further explained below, it lacks trustworthiness.

hearing to show she was employed.  During her testimony, she explained that in the past six

months she had not earned any income, which was why she stated that she had no income on

her Schedules or Statement of Current Monthly Income.[27]

Under the Federal Rules of Evidence, made applicable in bankruptcy proceedings

pursuant to Fed. R. Bankr. P. 9017, records of a regularly conducted activity are an exception

to the general rule against the admission of hearsay evidence if:

> (A) the record was made at or near the time by—or from information
> transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a
> business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another
> qualified witness, or by a certification that complies with Rule 902(11) or (12)
> or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or
> circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).  Debtor did not offer testimony to establish that this "business records"

hearsay exception applied.  She testified only that she downloaded the Paystub from the ADP

application on her phone.  Even if Debtor could establish the stated requirements of the

exception, ACA argued that the Paystub lacks trustworthiness.  The Court agrees and notes

that, unlike the Schedules and Statements, the Paystub was not submitted under penalty of

perjury and clearly contradicts Debtor's earlier statements made under penalty of perjury that

she had no job and no income as of July 10, 2025, when the Schedules and Statements were

filed—or even as of July 8, 2025, when Debtor first attempted to submit her petition to the

---

[27] The Statement of Current Monthly Income requires the debtor to "[f]ill in the average monthly income that
you received from all sources, derived during the 6 full months before you file this bankruptcy case."  Schedule
I, however, requires the debtor to "[e]stimate monthly income *as of the date you file this form*." (emphasis added).
Debtor stated that she had no income on both forms.

Court, for that matter.[28]  Debtor's testimony regarding the timeline of her new employment and her explanation for why she did not disclose the new job at the time of the bankruptcy filing was inconsistent and unconvincing.  Even if the Court accepted Debtor's explanation as to her reading of what income the forms required her to disclose, that does not explain why Debtor checked the box on Schedule I indicating that she was "Not employed" and further represented that she was "actively seeking employment" as of the date the form was filed. The Court does not find Debtor's testimony regarding the Paystub to be credible or to provide sufficient foundation for establishing the document as an admissible business record.  Thus, the Court is unable to conclude that the Paystub has sufficient indicia of trustworthiness to be considered reliable.

Due to these concerns regarding trustworthiness, the Court further finds that the Paystub is inadmissible as a duplicate under Fed. R. Evid 1003, which provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid 1003; *see also* Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise.").  All things considered, Debtor failed to "produce evidence sufficient to support a finding that the [Paystub] is what [she] claims it is" as is required to authenticate evidence for admission into the record.  Fed. R. Evid. 901(a).  Accordingly, the Court sustains ACA's objection and excludes the Paystub from evidence.

---

[28] The Court further notes that there are mathematical and other errors on the Paystub which cause the Court to question its authenticity.  Specifically, the deductions on the Paystub total $2,010.73, and the gross pay of $7,500, less the $2,010.73 in deductions, equals $5,489.27, but the net pay is $5,484.02.  Moreover, while not dispositive of the issue, the Court finds it unusual that the paystub includes reference to South Carolina as "SC" before "Federal Tax."

After the hearing concluded and the record was closed, Debtor filed the Statement Regarding Income for Bankruptcy Hearing on July 24, 2025, which attached an offer letter from Qualitest P&T indicating that she had received new employment— just hours after the hearing concluded—with that company beginning on August 5, 2025.  The Court declines to consider this document for purposes of deciding the Motion to Convert because ACA was not provided with an opportunity to object to the document, cross-examine Debtor regarding the document, or challenge the document's authenticity.  Moreover, Debtor did not mention that she was seeking new employment during the hearing or indicate that an offer letter was anticipated, suggesting the letter's submission was another last-ditch effort to appease the Court's concerns about inconsistencies in the record regarding Debtor's income.

Based on the evidence presented and after weighing Debtor's questionable credibility, the Court concludes that Debtor has failed to demonstrate that she has regular income which would allow her to be a debtor in a Chapter 13 case.  Furthermore, Debtor's proposed Plan is not feasible because Debtor proposes to have the Chapter 13 trustee disburse payments of $700.00 to ACA but provides that she will make monthly payments to the trustee of only $500.00.  Moreover, the Plan provides for payments to be made for 77 months, which exceeds the five-year term maximum for Chapter 13 plans set forth in § 1322(d).  *See* 11 U.S.C. § 1322(d)(1)-(2) (providing that the court may not approve a plan period that is longer than 5 years for either an above-median or below-median debtor); *In re Goldston,* 627 B.R. 841, 854 (Bankr. D.S.C. 2021) (quoting *In re Arnold,* 869 F.2d 240, 242 (4th Cir. 1989)) ("Congress provided that Chapter 13 bankruptcy payment plans could last no longer than five years. . . . The debtor knows that after five years he is 'in the clear' and has a chance for a 'fresh start'

in his financial life."). Consequently, conversion of the case to seek confirmation of Debtor's proposed Plan would not achieve a purpose permitted under Chapter 13.

The Court further observes that Debtor appears ineligible to be a debtor under 11 U.S.C. § 109(h) because the certificate of credit counseling she filed on July 21, 2025 indicates that she completed the required bankruptcy course on July 21, 2025—11 days after the Petition Date. With limited exceptions not applicable here, section 109(h)(1) "requires an individual to obtain credit counseling within the 180 days *prior to* filing a bankruptcy petition and file a certificate to that effect to qualify as a debtor in a bankruptcy case." *In re Addison,* 667 B.R. 313, 316 (Bankr. D.S.C. 2025) (emphasis theirs). While Debtor testified that she completed the module part of the course on July 8, 2025—and filed a receipt with her certificate indicating purchase of a credit counseling course on July 8, 2025—she admitted that she did not receive the certificate of credit counseling on July 8, 2025, because she was required to speak with a representative and none were available at that time. She did not speak with the representative until July 21, 2025, at 1:39 p.m., and the certificate of credit counseling was issued to indicate completion of the requirement at that time. As with other inconsistencies between her testimony and the documents filed, in the Voluntary Petition at Part 5, Item 15, dealing with compliance with § 109(h), Debtor indicated "I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion," which is inconsistent with her later assertions.

While the Court does not need to analyze Debtor's bad faith because she has not even provided credible proof of her eligibility to be in Chapter 13, the Court notes that Debtor's inconsistent and contradictory statements to the Court, several made under penalty of perjury, raise serious concerns regarding Debtor's lack of good faith. *See In re Autry*, No. 24-50214,

2024 WL 4131856, at *3 (Bankr. M.D.N.C. Aug. 15, 2025) (noting that "a chapter 7 debtor

forfeits the right to convert to chapter 13 if he or she has engaged in bad faith conduct" and

"[n]umerous decisions . . . have found that a debtor's concealment of assets and transfers can

constitute bad faith sufficient to deny conversion").  The Supreme Court did not articulate

what constitutes lack of good faith when considering motions to convert from Chapter 7 to

Chapter 13, but it recognized that a court may take appropriate action and invoke such

exception to a debtor's right to convert where the purpose of the "fresh start" to be provided

to the "honest but unfortunate debtor" is abused:

> We have no occasion here to articulate with precision what conduct qualifies
> as "bad faith" sufficient to permit a bankruptcy judge to dismiss a Chapter 13
> case or to deny conversion from Chapter 7.  It suffices to emphasize that the
> debtor's conduct must, in fact, be atypical.  Limiting dismissal or denial of
> conversion to extraordinary cases is particularly appropriate in light of the fact
> that lack of good faith in proposing a Chapter 13 plan is an express statutory
> ground for denying plan confirmation.

*Marrama*, 549 U.S. at 375 n.11.  Having reviewed the entirety of the record and listened to

Debtor's testimony, the Court does not find Debtor to be credible.  Her filing of schedules

under penalty of perjury and pleadings containing information and facts which she then

recanted to change the story to her advantage, as further explained below, raises questions

about Debtor's bad faith.

For the foregoing reasons, Debtor's Motion to Convert is denied.

## II.    Motion for Turnover of Property and Enforcement of Automatic Stay pursuant to 11 U.S.C. §§ 362 and 542

Debtor seeks return of the Vehicle from ACA pursuant to 11 U.S.C. § 542, claiming

ACA repossessed the Vehicle.  As a threshold matter, the Court must first consider whether

Debtor has standing to bring the Turnover Motion.  "In a bankruptcy case, in addition to

constitutional standing concerns, the standing of a party requesting to be heard is dependent

on whether the party is a party in interest." *In re Little,* No. 24-04146-JD, 2024 WL 5182324, at *2 (Bankr. D.S.C. Dec. 19, 2024) (quoting *In re Barnwell Cnty. Hosp.*, 459 B.R. 903, 906 (Bankr. D.S.C. 2011)); *see also O'Neal v. Quicken Loans, Inc.,* No. 1:15-cv-03712-JMC, 2016 WL 3569402, at *4 (D.S.C. June 30, 2016) (quoting *Wilson v. Dollar General Corp.,* 717 F.3d 337, 342 (4th Cir. 2013)) (stating that the Fourth Circuit has recognized in the "Chapter 7 bankruptcy context—which requires liquidation and distribution of assets by the trustee— [that] if a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim").   In a Chapter 7 case, all prepetition property and interests become property of the estate to be administered by the Chapter 7 trustee in accordance with the statutory duties of administration and liquidation of the bankruptcy estate.   For this reason, only the Chapter 7 trustee has standing to assert a turnover claim in a Chapter 7 case.  *Little,* 2024 WL 5182324, at *5; *see also In re Freeman,* 331 B.R. 327 (Bankr. N.D. Ohio 2005) (observing that a Chapter 7 debtor generally has no standing to bring an action for turnover); *Marquez v. ADP, Inc. (In re Marquez),* No.7-12-11773, Adv. No. 12-1194, 2013 WL 74606 (Bankr. D.N.M. Jan. 4, 2013) (same).   Accordingly, the Court finds that the Turnover Motion must be denied because Debtor lacks standing to bring the motion.

Even if the Debtor had standing, the Turnover Motion would still be denied.  The burden of proof in a turnover action lies with the party seeking turnover.  *In re Lents,* 644 B.R. 479, 492 (Bankr. D.S.C. 2022).   "Under § 542(a), the following elements must be demonstrated to require an entity to turnover property of the estate or its value: (1) during the case, (2) an entity other than a custodian, (3) was in possession, custody or control of property that a trustee could use, sell, or lease under 11 U.S.C. § 363 or that a debtor may exempt under 11 U.S.C. § 522, and (4) that such property is not of inconsequential value or benefit to the

estate." *In re Altman,* 647 B.R. 148, 150 (Bankr. D.S.C. 2022) (citing *In re Milledge,* 639

B.R. 334, 343-44 (Bankr. D.S.C. 2022)).  Debtor has not met these requirements.  First, she

did not claim an exemption in the Vehicle on Schedule C.  Second, on Schedule J, Debtor

further states that she was behind on her car insurance payment.  She has failed to demonstrate

that she either has proper insurance on the Vehicle or is in a position to obtain insurance to

provide adequate protection of ACA's interest.  ACA objects to the turnover of the Vehicle

because it argues that Debtor has not demonstrated that its interest is adequately protected.

This Court has previously held that a debtor must offer adequate protection to trigger a

creditor's duty to turnover its collateral.  *See Jennings v. R & R Cars and Trucks (In re*

*Jennings)*, C/A No. 01-02330-W, Adv. Pro. No. 01-80044, 2001 WL 1806980 (Bankr. D.S.C.

Sept. 17, 2001) (finding that a creditor's duty to turnover property of the estate is triggered

when the debtor initiates the turnover request and offers the most essential means of

adequately protecting the creditor's interest, insurance, while leaving an affirmative burden on

the creditor to respond immediately to the turnover demand, either on the debtors' terms or

accompanied by an expedited request to the Court for adequate protection or other relief).[29]

---

[29] Although raised in the context of a possible violation of the automatic stay pursuant to 11 U.S.C. § 362(a)(3),
in her concurrence with the majority's holding that the mere retention of a vehicle repossessed prepetition after
the filing of a bankruptcy petition does not constitute a violation of § 362(a)(3), Justice Sotomayor noted:

> Although the Court today holds that § 362(a)(3) does not require creditors to turn over
> impounded vehicles, bankruptcy courts are not powerless to facilitate the return of debtors'
> vehicles to their owners. Most obviously, the Court leaves open the possibility of relief under
> § 542(a). That section requires any "entity," subject to some exceptions, to turn over "property"
> belonging to the bankruptcy estate. 11 U.S.C. § 542(a). The debtor, in turn, must be able to
> provide the creditor with "adequate protection" of its interest in the returned property, § 363(e);
> for example, the debtor may need to demonstrate that her car is sufficiently insured. In this
> way, § 542(a) maximizes value for all parties involved in a bankruptcy: The debtor is able to
> use her asset, which makes it easier to earn an income; the debtor's unsecured creditors, in
> turn, receive timely payments from the debtor; and the debtor's secured creditor, for its part,
> receives "adequate protection [to] replace the protection afforded by possession." *United*
> *States* v. *Whiting Pools, Inc.*, 462 U.S. 198, 207, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

*City of Chicago v. Fulton*, 141 S.Ct. 585, 594 (2021)

Moreover, Debtor appears to be playing fast and loose with the Court. In the Turnover Motion, Debtor states that the Vehicle was repossessed "two days after the original filing," which would be July 12, 2025, if two days are added to the Petition Date. At the hearing, Debtor stated that the car was repossessed on July 8, 2025, when she claims she submitted the Petition on the eSR system. In its Motion for Relief from Stay and at the hearing, ACA represented to the Court that the car was repossessed on July 7, 2025—prepetition. The Court finds ACA's account of the repossession date to be more credible than Debtor's inconsistent assertions.

ACA further presented into evidence: (1) an email from Debtor to ACA, dated July 17, 2025, stating that "[t]he courts approved the clerical error and updated my bankruptcy case to reflect chapter 13 with the amended case number filed" (Exhibit B), together with (2) the Notice of Bankruptcy Case Filing that was attached to the email it received from Debtor (Exhibit C), which shows that a Chapter 13 bankruptcy case was entered on July 6, 2025 at 9:22 a.m. and filed on July 10, 2025 at 12:08 a.m., and (3) the actual Notice of Bankruptcy Case Filing issued (Exhibit D) that shows that the Chapter 7 bankruptcy case was entered on July 10, 2025 at 9:22 a.m. and filed on July 10, 2025 at 12:08 a.m., the latter of which is consistent with the Court's records. ACA suggested that Debtor doctored the actual Notice of Bankruptcy Case Filing to create the document emailed to ACA and admitted into evidence as Exhibit C. Though the record only contains circumstantial evidence to support such allegation, the Court notes that the inconsistencies between Debtor's testimony and her statements made in exhibits and pleadings undermine the credibility of Debtor's version of events. She testified that Exhibit D was the document that she received from the Court and claimed that she had no idea how ACA came into possession of the Notice containing false

information (Exhibit C).  However, she acknowledged that she sent the email on July 17, 2025 (Exhibit B), wherein she represented to ACA that her case had been converted to Chapter 13, which was untrue.  Ultimately, Debtor bears the burden to prove that she is in a position to provide ACA adequate protection, and she has failed to do so.  *See* 11 U.S.C. § 363(p).[30]

Finally, as to Debtor's request for relief under 11 U.S.C. § 362 for wrongful repossession of the Vehicle post-petition in violation of the automatic stay, the Court finds that Debtor's request should be denied because Debtor has failed to prove that the Vehicle was repossessed post-petition in violation of the automatic stay.  Debtor carries the burden of proof for an action for willful violation of the automatic stay.  *In re Weathers,* 670 B.R. 20, 32 (Bankr. D.S.C. 2025).  "To recover damages for a willful violation of the automatic stay, a debtor must establish five elements: (1) a bankruptcy petition was filed, (2) the debtor is an "individual" under the automatic stay provision, (3) the creditor received notice of the petition, (4) the creditor's actions in violation of the stay were willful, and (5) the debtor suffered damages."  *Id.* (citing cases).  While ACA represented to the Court that the Vehicle was repossessed prepetition on July 7, 2025, Debtor stated that the Vehicle was repossessed on July 8, 2025.  Regardless, both dates were prior to the Petition Date and therefore the Court concludes that the repossession took place before the automatic stay was in place. Accordingly, Debtor has failed to establish that ACA violated the automatic stay—willfully or otherwise.[31]

---

[30] The Court further notes that the hearing on ACA's Motion for Relief from Stay has been scheduled for August 21, 2025, but Debtor did not file a response by the deadline, meaning the motion can be granted by default.

[31] In the Order and Notice of Emergency Hearing Regarding Turnover of Vehicle and Enforcement of the Automatic Stay, the Court had stated that "to the extent necessary, a hearing on the remaining requests for relief set forth in the Motion will be held on August 21, 2025."  The Court does not see any need for such hearing at this time.

**CONCLUSION**

For the foregoing reasons, the Debtor's Motion to Convert Case from Chapter 7 to

Chapter 13 and Amended Motion for Turnover of Property and Enforcement of Automatic

Stay pursuant to 11 U.S.C. §§ 362 and 542 are both DENIED.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**08/05/2025**



Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

Entered: 08/05/2025